**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Prison Legal News, a project of the Human Rights Defense Center,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Paul Babeu, individual and in his official capacity as Sheriff of Pinal County, Arizona; et al.,<br><br>　　　　　　Defendants. | NO. CV 11-01761-PHX-GMS<br><br>**ORDER** |

The Court has before it the supplemental briefing (Docs. 144, 148) it requested on the publisher-only rule in a previous Order. (Doc. 143 at 10–13.) Defendants have moved to strike most of the Response filed by Plaintiff Prison Legal News ("PLN"). (Doc. 149.) After reviewing the Parties' submissions, the Court grants in part and denies in part Defendants' Motion to Strike and denies PLN's outstanding Motion for Permanent Injunction (Doc. 85). PLN has also filed a Motion for Reconsideration. (Doc. 145.) Defendants responded in accordance with this Court's Order, and the Court now denies the Motion for Reconsideration.

**I.   PUBLISHER-ONLY RULE AND NECESSITY FOR A PERMANENT INJUNCTION**

On March 19, 2013, this Court issued an Order in response to the Cross-Motions for Summary Judgment that the Parties filed. (Doc. 143.) In that Order, the Court resolved several of the claims, but ordered supplemental briefing on one issue and the effect of that issue on PLN's request for injunctive relief. Specifically, PLN requested a permanent injunction that would prevent Defendants from rejecting PLN materials under the

mailroom policy in effect at Pinal County Jail. (Doc. 86 at 13–17.) One of PLN's arguments for the necessity of injunctive relief was that the policy's current provisions governing admission of publications were "vague and contradictory." Before resolving PLN's Motion for Permanent Injunction, the Court sought clarification on the "basis the jail has determined to presently accept all the materials that PLN sends into it." (Doc. 143 at 13.) That information, in turn, would illuminate the inquiry into whether injunctive relief is necessary.

### A. Background and Current Application of the Publisher-only Rule

The official mailroom policy in effect when PLN's materials were rejected allowed "publications" as long as they "c[a]me directly from a recognized publisher, distributor, or authorized retailer." (Doc. 88-5, Ex. Q at PCSO 000052; *id.* at PCSO 000066.) Nowhere did the policy define the term "publication" or describe how jail staff determined a given publisher, distributor, or retailer became "recognized" or "authorized." The Parties referred to this rule as the "publisher-only" rule. At the time PLN was sending materials, mailroom staff applied the publisher-only rule for books in a very limited fashion. Only four vendors, who were in fact not generally publishers, were considered "recognized": Amazon, Borders, Barnes & Noble, and Waldenbooks. (Doc. 87 ¶ 25; Doc. 99 ¶ 25.) And so only books coming from these book sellers were allowed. (*Id.*)

Defendants conceded the unconstitutionality of the way mailroom staff applied the publisher-only rule. (Doc. 98 at 7.) The Court then determined the liability of various Defendants under 42 U.S.C. § 1983 for those unconstitutional actions and the availability of certain categories of damages to PLN at trial that stemmed from the First Amendment violations, among others. (Doc. 143 at 18–25; 28–32.)

PLN also requested injunctive relief and cited the fact that the publisher-only rule under the new policy was substantially similar to the previous policy, which mailroom staff had implemented in an unconstitutional manner. The Court made the following observations:

> PLN asks the Court to enter a permanent injunction that it may send materials into the jail and have them received by the addressees.

> Nevertheless, in light of the deference to which prison officials are entitled, the Court is disinclined to enter such a broad and undefined injunction on a permanent basis, when it is not sure on what basis the jail has determined to presently accept all the materials that PLN sends into it. PLN might change the nature of materials it seeks to send into the jail that could conceivably cause security or management concerns. Nor, in light of the jail's undisputed representation that all of PLN's materials are now being received, is it necessarily clear that such an injunction is necessary.
>
> On the other hand, when Defendants have not explained what determinations were made under the current policies to allow the receipt of PLN's materials, nor the criteria on which such determinations were made, if any, it is possible that the jail's current decision to allow such materials may be ephemeral. This is underlined by the jail's refusal to permit mailing privileges to other organizations that PLN asserts are similar to it. Further, to the extent there are no such criteria there is the possibility if not likelihood that the jail is resolving such matters "on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."

(*Id.* at 12–13 (quoting *Cohen v. San Bernardino Valley Coll.*, 92 F.3d 968, 972 (9th Cir. 1996)).)

Deputy Chief James Kimble, who has final policymaking authority for the prisons in Pinal County, (Doc. 87 ¶ 35; Doc. 99 ¶ 35), filed a Declaration in response to the Court's Order for supplemental briefing. (Doc. 144-1, Ex. 1.) Deputy Chief Kimble clarified how the jail is currently implementing the "publisher-only" rule.

The current policy permits "publications" so long as they come from a "recognized publisher, distributor, or authorized retailer." (Doc. 88-6, Ex. S at PCSO 000082.) "Publications" are defined as "books, magazines, periodicals, and catalogs." (*Id.* at PCSO 000075.) Upon arrival, all publications are screened for contraband. (Doc. 144-1, Ex. 1 ¶ 3.)[1] The policy, however, does not specify what criteria the jail employs to classify an entity as a "recognized publisher, distributor, or authorized retailer."

Nevertheless, Deputy Chief Kimble has "interpreted the terms 'recognized publisher,' 'recognized distributor,' and 'authorized retailer' to mean that the identity and address of the purported publisher, distributor, and/or retailer have been verified through

---

[1] At no point has PLN ever challenged this procedure.

internet searches, thus eliminating any danger that it is an individual attempting to contact inmates by simply using a name that sounds like a book publisher or distributor." (*Id.* ¶ 4.) The reason the jail allows publications only from entities—not individuals—is "[t]o eliminate contraband." (*Id.* ¶ 3.)

PLN mails (1) its own newsletter, (2) its own brochures and pamphlets, (3) books that it has published, and (4) books that are published by other entities. (Doc. 89 ¶¶ 4–6, 12.) According to Deputy Chief Kimble, "PLN is a recognized publisher and distributor because its identity is able to be independently verified." (Doc. 144-1, Ex. 1 ¶ 5.) Consequently, PLN's own newsletter, brochures, and pamphlets and self-published books are allowed because "they come directly from PLN, a recognized publisher, and not from an individual." (*Id.* ¶ 6.) For books that PLN does not publish but still distributes, PLN is considered a "recognized distributor." (*Id.*)

**B. Analysis**

PLN seeks a permanent injunction against Defendants. PLN, however, has not had any materials rejected by the jail since this lawsuit was filed. (Doc. 99 ¶ 94; Doc. 119 ¶ 94.) Injunctive relief is for unusual cases, where a plaintiff "(1) has suffered an irreparable injury; (2) [where] remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) [where], considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) [where] the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In case like this, where the injury to the plaintiff has ceased, the plaintiff carries a weighty burden to show that future injury is likely. *See Nelsen v. King Co.*, 895 F.2d 1248, 1251 (9th Cir. 1990). Notably, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

As discussed in the prior Order, several Defendants violated PLN's constitutional rights, and PLN can proceed to trial to determine what damages should be awarded. But any injury due to application of the publisher-only rule appears to be over, and injunctive

relief is appropriate only when injuries are ongoing or imminent. *See Demery v. Arpaio*, 278 F.3d 1020, 1025–26 (9th Cir. 2004) ("[A] suit for injunctive relief is normally moot upon the termination of the conduct at issue" unless there is evidence that the conduct is likely to recur).

PLN's primary argument for why the jail is likely to deny its materials in the future pursuant to the publisher-only rule is that the jail currently allows PLN materials only on the whim of Deputy Chief Kimble. PLN is a "recognized publisher and distributor" because Deputy Chief Kimble interpreted the terms "approved" and "recognized" to mean "verifiable by internet search." An internet search confirmed the existence of PLN. Yet the policy itself does not prescribe that procedure. Its opacity leaves open the possibility that a subsequent Deputy might ascribe a different meaning to those terms that would move PLN back to the blacklist. The written policy's failure to specify the procedure for approval may leave open the possibility that, despite the efforts of Deputy Chief Kimble, jail officers might resolve questions of approval "on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Cohen*, 92 F.3d at 972. This is the vagueness that the First Amendment condemns. *Id.*

To support its theory that the policy—even with Deputy Chief Kimble's interpretation—will result in arbitrary application and that an injunction is necessary, PLN cites the jail's refusal to permit mailing privileges to other similarly-situated non-profit entities, such as Prison Library Project and Read Between the Bars. (Doc. 88-8, Ex. AA at PCSO 000224-26; *id.*, Ex. CC at PCSO 005292, 005241-44, 005424.) While those entities are not parties to this case and PLN cannot assert their rights, the jail's treatment of those materials serves as a yardstick for measuring how jail staff are implementing the publisher-only rule and whether the danger is real that they might refuse PLN materials in the future. At one point, PLN materials were getting through, but materials from other non-profits were not, raising the possibility that the only reason PLN materials were allowed was because PLN had filed suit.

Defendants counter by asserting that Deputy Chief Kimble has personally institutionalized his interpretation of the policy by conducting training for all jail staff.

(Doc. 144-1, Ex. 1 ¶¶ 8–9.) Under Deputy Chief Kimble's interpretation of the policy, books from non-profits like Read Between the Bars and Prison Library Project are allowed—those entities qualify as "recognized distributors because their identity can be independently verified." (*Id.* ¶ 7.) Consequently, jail staff should allow materials from those organizations. (*Id.*)

Deputy Chief Kimble acknowledged, however, that "[u]nfortunately, during and shortly after the implementation and training phase of the jail policy on incoming mail, several publications were [incorrectly] rejected. . . . Apparently front line mail staff did not independently verify the identity of these organizations." (*Id.* ¶ 8.) This lapse would explain why the jail was rejecting materials from other non-profit organizations while allowing PLN material in. Jail staff were unaware of Deputy Chief Kimble's interpretation of the policy, and, as discussed in the prior order, appeared to adhere to the idea that the only approved suppliers were Amazon, Borders, Barnes & Noble, and Waldenbooks. (Doc. 143 at 5, 10–13.)

Deputy Chief Kimble contends that he has disabused the jail staff of that notion. "Since that time [January and February, 2012), I have reinforced the implementation of the jail mail policy by personally instructing lower and upper supervisory staff on the proper implementation of the policy. I have also implemented periodic jail mail policy training for front line mail staff to reinforce the policy." (Doc. 144-1, Ex. 1 ¶ 8.) Accordingly, "[f]ront line mail staff now know that . . . 'recognized publishers and distributors' and 'authorized retailers' are those that can be independently verified to ensure that contraband is not hidden in publications that reach the jail. Publications coming to the jail go through a review process." (*Id.* ¶ 9.) Deputy Chief Kimble described the now-operational review process: "Front line mail staff (1) inspect each publication for contraband, sexually explicit materials, and unauthorized materials . . . and (2) must verify the identity of an unknown purported publisher, distributor and/or retailer through internet searches. If the internet search confirms the identity of the organization, then the publication should be allowed in subject to the [contraband] review process." (*Id.* ¶ 9.)

The training and review process that Deputy Chief Kimble outlined and that he

asserts is now operative appears to alleviate the concern from PLN's perspective that acceptance or rejection of its materials depends on which mailroom staffer reviews the package. Deputy Chief Kimble has testified that the review process is regularized and uniform.

In its Response, PLN attempts to raise issues as to the accuracy of Deputy Chief Kimble's affidavit. Defendants have moved to strike significant portions of PLN's Response. (Doc. 149.)[2] PLN filed copies of emails between jail staff that show confusion relating to the policy. Those emails, however, are all dated before PLN sought to send material to the jail, and are irrelevant to the very limited question the Court left for this supplemental briefing. Consequently, the Court grants Defendants' Motion to Strike the emails and accompanying affidavit. (Doc. 148-1; *id.*, Exs. 1–4.)

PLN also submitted an Expert Report, prepared by John L. Clark, who is a former corrections professional. (Doc. 148-1, Ex. 5.) The report and accompanying affidavit (Doc. 148-2), contain his review and opinion on the adequacy of all of the jail's mailroom policies. Only a small portion of Clark's report and affidavit is relevant to the question here, namely his opinion that "verbal instructions to staff in correctional institutions often do not lead to consistent implementation of written policies over time, as memories fade or personalities change." (*Id.* ¶ 10.) The Court has considered that observation for what it is worth in arriving at its final decision. The remainder of the report and affidavit is irrelevant, and the Court grants Defendants' Motion to Strike that material. (Doc. 148-1, Ex. 5; Doc. 148-2.)

Finally, PLN submitted an affidavit from a Jody Holmes. (Doc. 148-3 (Holmes Decl.).) Holmes claims to be "a core member of Read Between the Bars ('RBtB"), a non-profit book distributor." (*Id.* ¶ 2.) She claims that "[p]rior to reading Deputy Chief Kimble's March 29, 2013 affidavit it was my understanding that books sent by RBtB to

---

[2] Defendants believe that the standards normally applicable to a Motion for Reconsideration apply to any argument or evidence submitted by PLN in response to the Court's Order for supplemental briefing. While the Court is mindful of the respective burdens attendant to summary judgment, its Order did not necessarily foreclose the possibility of new evidence, provided that it was responsive to the issue.

prisoners at the Pinal County Jail would be rejected by mailroom staff and would not be delivered." (*Id.* ¶ 3.) Holmes states that Read Between the Bars ceased sending materials to Pinal County Jail after April 2010, but that a few volunteers were unaware of this change and sent books to prisoners as recently as April 2012, after the jail instituted the new policy. (*Id.* ¶¶ 5–7.) Those books were rejected and no notice was given as to the reasons for rejection. (*Id.* ¶ 7.)

PLN cannot use Holmes's affidavit to show that, despite Deputy Chief Kimble's training, the message has not gotten through and frontline mailroom staff are still rejecting publications on an ad-hoc basis. Holmes's statements lack foundation. The Federal Rules of Evidence state that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. PLN apparently relies on Holmes's status as "a core member" of Read Between the Bars to supply the foundation for her later claims about the packages sent to the Pinal County Jail. Nowhere does Holmes establish what "a core member" means. Nor does she claim that she sent the packages to the jail; indeed, it is clear that other volunteers sent those packages and received them back again. (Doc. 148-3 ¶¶ 6–7.) Her affidavit lacks foundation as to her claims about what happened with those packages—it is not clear what channels of communication she employed to ascertain what happened. Absent that foundation, she lacks sufficient personal knowledge to testify as to what the jail did with certain packages.

And in any event, her testimony does not establish that Pinal County has not fixed its former unconstitutional denial of access. It is not clear when Deputy Chief Kimble conducted the training he references in his affidavit. He cites incidents from December 2011, January 2012, and February 2012 where jail staff rejected materials from non-profits like PLN, and then states that "[s]ince that time, I have . . . personally instruct[ed] lower and upper supervisory staff on the proper implementation of the policy." (Doc. 144-1 ¶ 8.) According to Holmes, Read Between the Bars volunteers sent books in April 2012 and "[a]fter April 2012." (Doc. 148-3 ¶¶ 6–7.) On this incomplete record, the Court cannot determine that the jail rejected books from Read Between the Bars after Deputy

Chief Kimble conducted the training. Deputy Chief Kimble admitted that mailroom staff did not understand the new policy for a period of time after implementation and improperly rejected books from some "recognized" entities. PLN has not shown the jail is still administering the policy on an ad-hoc basis.

PLN has thus failed to show a likelihood that its materials will be denied in the future under the policy. Deputy Chief Kimble has standardized the approval process and ensured that frontline mailroom staff are aware of and are acting according to that policy. PLN has produced no evidence to the contrary. Consequently, PLN has not shown that it is likely to suffer future injury on the facts before the Court. Its Motion for a Permanent Injunction is denied.

## II. MOTION FOR RECONSIDERATION

PLN filed a Motion for Reconsideration (Doc. 145) of the Court's decision that the jail's prior policy limiting correspondence to one-page letters or postcards was not unconstitutional. (Doc. 143 at 13–15.) PLN contends that Court's ruling was manifest error because Defendants had previously conceded that the policy was unconstitutional.

### A. Legal Standard

A motion for reconsideration can be granted only on one of four grounds: "1) the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; 2) the moving party presents newly discovered or previously unavailable evidence; 3) the motion is necessary to prevent manifest injustice or 4) there is an intervening change in controlling law." *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (internal quotations and emphasis omitted). In addition, L.R. Civ. 7.2(g)(1) provides that "No motion for reconsideration of an Order may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order."

### B. Analysis

PLN fails to show why the Court should grant the Motion under the strict standards that govern these requests. When PLN tried to send its materials into the jail, at least some materials were rejected under the jail's policy limiting correspondence to one-page letters

or postcards. (Doc. 88-5, Ex. Q at PCSO 000048; *id.* at PSCO 000062.) The Court upheld that policy under *Turner v. Safley*, 482 U.S. 78, 84 (1987). The arguments PLN makes, and the evidence it cites to show that the decision was manifestly erroneous, were either previously made or could have been made at the summary judgment stage. At no point does PLN attempt to fit its argument to one of the limited bases that can support a Motion for Reconsideration.

It is true that PLN described the postcard and one-page letter policy and how certain PLN materials were denied under that policy in its Motion for Partial Summary Judgment. (Doc. 86 at 4.) But when PLN laid out its legal challenge to the mail policies, it chose not to make any specific arguments about the unconstitutionality of the one-page policy. Instead, PLN argued broadly that "[t]he Jail's policies and practices violate established law on the First Amendment rights of publishers and prisoners." (*Id.* at 5.) At no point in its Motion did PLN differentiate between the policy banning newspapers and magazines, the publisher-only rule, or the postcard/one-page letter policy. PLN lumped all of the policies together into a generalized argument that all of Defendants' policies were patently unconstitutional.

With regard to the one-page/postcard policy, PLN made only one specific point: "Defendants' person-most-knowledgeable testified that there was no legitimate penological interest for the postcard only policy, and that in his professional experience there were penological benefits to allowing inmate correspondence." (*Id.* at 7.) PLN supported that statement with a citation to Deputy Chief Kimble's deposition. (*Id.*) At his deposition, Deputy Chief Kimble was asked why he changed the policy from allowing only postcards to allowing both postcards and one-page letters. (Doc. 88-1, Ex. I at 60:19–61:13.) Deputy Chief Kimble responded by stating that "we don't have anything to show a legitimate penological interest" to justify allowing only postcards but not letters. (*Id.* at 61:14–25.) He also added that allowing prisoners to write letters is helpful in maintaining order. (*Id.* at 62:1–7.) Nowhere did he state that the jail lacked a legitimate penological interest in limiting correspondence to postcards and one-page letters.

Defendants likewise did not directly address the constitutionality of the

postcard/one-page letter policy in their Response/Cross-Motion for Summary Judgment, but, unlike the other policies, neither did Defendants concede that the postcard/one-page letter policy was unconstitutional. (Doc. 101 at 7.) Finally, in its Reply/Response to Defendant's Cross-Motion, PLN made its first specific argument for why the postcard/one-page letter policy was unconstitutional. First, it claimed, citing supporting facts, that "PLN has demonstrated that Jail policy allowed inmates to receive correspondence only in the form or postcards and one-page letters, and that delivery of PLN's materials, including its information packs, was refused as a result." (Doc. 117 at 6; Doc. 87 ¶¶ 2, 5, 24.) The Court accepted these facts in its Order. PLN then claimed that "Defendants have offered no evidence that this policy served a legitimate penological objective. [citation]. It follows that summary judgment should be granted." (Doc. 117 at 6.) Those statements constituted the extent of PLN's case against the postcard/one-page letter policy. Defendants argued in their Reply that "PLN errs in suggesting that the jail's one-page letter policy was unconstitutional . . . . Prison officials are free to limit the number of pages of material an inmate may receive or send in the mail in order to reduce the volume of materials they must screen for contraband." (Doc. 132 at 3.)

In light of the portions of the record that the Parties cited and the arguments they made, the Court concluded that

> [t]here appears to be a common-sense connection between a jail goal of reducing contraband and limiting the number of pages a particular piece of correspondence contains. . . . PLN has not provided any evidence that would refute the obvious connection between a page limit and volume control. The remaining *Turner* factors do not counsel against the constitutionality of the jail's policy. Sufficient alternative avenues of communication remain open for publishers like PLN who wish to communicate with inmates at the Pinal County Jail: newspapers, magazines, books, brochures and other publications. The jail's policy limiting correspondence to one-page and postcards did not violate the First Amendment.

(Doc. 143 at 14–15.)

For the first time in its Motion for Reconsideration, PLN claims that Defendants disclaimed any legitimate penological interest in their discovery responses and waited

until their Reply to raise the issue. PLN's argument fails for two reasons. First, it is not a proper basis for a Motion for Reconsideration. PLN's citations to other evidence in the record are unavailing. Most of that evidence was already considered by the Court in its Order. As to the statements PLN cites for the first time, PLN could have cited those statements in its original Motion and did not. None of the evidence qualifies as newly-discovered. The remainder of PLN's Motion for Reconsideration rehashes why certain cases that the Court relied on are inapplicable. None of those are proper bases for a Motion for Reconsideration.

The second reason PLN's argument is unconvincing is because it is incorrect. PLN bore the burden on its Motion for Summary Judgment to show that the postcard/one-page policy was not "rationally related to a legitimate and neutral governmental objective." *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (citing *Turner*, 482 U.S. at 89–90); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") PLN attempts to avoid its failure to meet that obligation by contending that it thought Defendants had already conceded the point. PLN then references Defendants' Responses to two Interrogatories as evidence of the concession. The Court has reviewed those discovery responses (Doc. 145-1, Ex. B) and nowhere did Defendants concede that there was no legitimate penological interest in the decision to restrict incoming mail to postcards/one-page letters. They conceded that the materials were not denied "based on content" or because the materials themselves "implicated a health or safety concern" or would have "an adverse impact on other guards and prisoners". (*Id.*) But they did not concede that the specific policy that allows only postcards and one-page letters was unconstitutional. PLN still had to carry its burden on summary judgment and it did not.

Accordingly, PLN has failed to show clear error. There is no basis for reconsideration.

**CONCLUSION**

PLN has failed to show that its materials are likely to be rejected under the publisher-only rule, and is therefore not entitled to a permanent injunction. PLN has likewise failed to show manifest error in the Court's decision upholding the postcard/one-page letter policy.

**IT IS THERFORE ORDERED** that PLN's Motion for Permanent Injunction (Doc. 85) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike (Doc. 149) is **granted in part and denied in part** as described herein.

**IT IS FURTHER ORDERED** that PLN's Motion for Reconsideration (Doc. 145) is **DENIED**.

Dated this 1st day of May, 2013.

*A. Murray Snow*
/G. Murray Snow
United States District Judge